## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **COREY D. JONES, # B-20059,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 14-cv-1098-MJR** |
| | ) | |
| **C/O DEAN, C/O HUDLEY,** | ) | |
| **WARDEN DUNCAN,** | ) | |
| **C. COLE, C/O BRANT,** | ) | |
| **SGT. KICHNELL,** | ) | |
| **and C/O OCHS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He claims that several Defendants beat a fellow inmate in a neighboring cell, then proceeded to physically assault Plaintiff after he protested their misconduct. Following that incident, those guards retaliated against Plaintiff, and other officials failed to properly investigate the incident or take action to stop the continuing retaliation.

According to the complaint, on August 21, 2014, five inmates who had just been transferred to Lawrence from Vandalia Correctional Center were taken to the showers and beaten by several guards (Doc. 1, p. 5). One of those prisoners was then placed in a cell next door to Plaintiff's segregation cell, where Defendants Dean, Hudley, Cole, Brant, and Kichnell continued their attack on him. The prisoner's hands were cuffed behind his back the entire time. Plaintiff called out to the officers that "they were bogus for beating on that inmate like that." *Id.*

Defendant Dean hollered back to Plaintiff that he was next.  When they finished with his neighbor, the above Defendants ordered Plaintiff to cuff up.  He complied, and they took him to the showers and beat him up while he remained cuffed with his hands behind his back.  They told him that he got that treatment because he "opened [his] big mouth." *Id.*

After they finished beating him, Plaintiff asked Defendants Dean, Hudley, Cole, Brant, and Kichnell for medical attention.  They refused to get him any help.  Defendant Dean told him that if he said anything to the nurse about the incident when she brought his medication, the "beat down crew" would come back and "beat [his] ass" (Doc. 1, p. 5).  Plaintiff was afraid, so he said nothing to the nurse.  He had suffered blows to his head and body causing black eyes, a slit lip, and injuries to his lower back and abdomen (Doc. 1, p. 11).  As of the time he filed the instant complaint, Plaintiff still had never received any medical attention for the injuries inflicted in the beating.  He suffers from back pain so severe that it hurts to walk, has painful headaches, and intense stomach pain because the beating aggravated an old gunshot wound.  *Id.*

On September 10, 2014, Plaintiff asked Defendant Ochs (the regular wing officer) to help him speak to a higher-ranking officer or to the Warden about the beating and lack of medical treatment (Doc. 1, p. 5).  Plaintiff had tried to submit letters and grievances but his mail had been intercepted and destroyed by the officers who had beaten him or their cohorts.  Defendant Dean and the other four officers who worked the 3:00-11:00 shift were threatening him with another beating, and Plaintiff feared for his life.  Defendant Ochs said there was nothing he could do, and walked away.

On September 17, 2014, Plaintiff refused to let an officer close his food-tray slot until he was allowed to talk to somebody about "what was going on" (Doc. 1, p. 6).  Plaintiff was taken to see Lt. Dallas, and Lt. Freeman was called in.  (Neither of these officers is a named

Defendant.)  Plaintiff told them both about the beating, refusal of medical treatment, threats, and withholding of his mail, and named other inmates who had experienced the same problems. Plaintiff was returned to his cell.  Later in the day when Defendants Dean and Hudley came on the 3:00-11:00 shift, they removed Plaintiff and his cellmate from their cell in order to search it. Plaintiff saw them go through his legal mail and remove a letter to the Warden, four grievances, and a complaint Plaintiff filed with the Illinois State Police over the beating.  Defendant Dean placed those documents inside his shirt and told Plaintiff he should fear for his life, adding he was going to "get [his] snitch ass" and Plaintiff would not get any mail when he works.

On September 18 and 21, 2014, Defendant Dean refused to give Plaintiff a food tray on the 3:00-11:00 shift.  He also worked the breakfast shift on September 21, and gave Plaintiff's tray to his cellmate, telling Plaintiff, "snitches don't eat" (Doc. 1, p. 6).  Plaintiff claims that some officers on that shift still (as of the date of the complaint) refuse to feed him (Doc. 1, p. 10).  Also on September 21, Defendant Dean informed three other inmates that Plaintiff was a snitch.  He told these inmates that he would put Plaintiff in their cell(s) in handcuffs, and if they beat him up, he would get them extra trays, move them to a better cell, and help them get a television.

The next day (September 22), Plaintiff refused to give up his food trays to Defendant Ochs until he was allowed to talk to Defendant Warden Duncan about the retaliation he was going through at the hands of the "beat down crew" (Defendants Dean, Hudley, Cole, Brant, and Kichnell) (Doc. 1, p. 7).  Sixteen other inmates in the segregation wing took the same action (Doc. 1-1, p. 30).  Defendant Ochs wrote a disciplinary report charging Plaintiff with 105 Dangerous Disturbance and 403 Disobeying a Direct Order.

On September 22, 2014, the warden sent Major Sorensen (not a Defendant) to talk

to the inmates in segregation about their complaints.  He spoke to two of the inmates and after hearing their concerns, told them some changes would be made.  The next day, Defendants Dean and Hudley were removed from the 3:00-11:00 rotation on the segregation wing.  However, Defendant Duncan left the other members of the "beat down crew" on the same shift, and the retaliation continued against Plaintiff (Doc. 1, pp. 7-8).

On September 28, 2014, Plaintiff was found guilty of the less serious disciplinary charge (disobeying an order).  The dangerous disturbance charge was dismissed (Doc. 1, p. 10).  He was punished with three months in segregation and C-grade status, and lost three months of good conduct credits (Doc. 1, p. 7).  As a result, his release date was moved from October 6, 2014, to December 6, 2014 (Doc. 1, p. 10).

On October 1, 2014, Defendant Duncan "finally" made a round in the segregation wing, and Plaintiff handed him a copy of a letter complaining about the beating and ensuing retaliation (Doc. 1, p. 8).  Plaintiff had made several attempts to send a letter to Defendant Warden Duncan, and complains that he was unable to get the letter to him because of the mail interference and the failure of Defendant Duncan and assistant wardens to make regular rounds in segregation.  Defendant Duncan dismissed Plaintiff's complaints, saying that an investigation had been made, and the claims of misconduct could not be proven (Doc. 1, p. 8).  Plaintiff asserts that the investigation was inadequate and served only to cover up staff misconduct (Doc. 1, p. 9).

Plaintiff also claims that the correctional officers who beat him acted out of racial animus, because they are all white and the inmates they beat up were all African-American, with the exception of one (Doc. 1, p. 9).

Finally, Plaintiff asserts that the officers' refusal to feed him has denied him adequate calories to maintain his physical and mental health (Doc. 1, p. 10).  He wants the

Defendants who beat him and other inmates and threw away his mail to be criminally charged (Doc. 1, p. 11).  Plaintiff seeks compensatory and punitive damages.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Plaintiff organized his complaint into sixteen "claims."  For the sake of brevity and clarity, the Court has reorganized the claims as described below.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal causes of action, which shall receive further review:

**Count 1:**  First Amendment retaliation claim against Defendants Dean, Hudley, Cole, Brant, and Kichnell for beating Plaintiff after he protested their abuse of a fellow prisoner on August 21, 2014;

**Count 2:**  Eighth Amendment excessive force claim against Defendants Dean, Hudley, Cole, Brant, and Kichnell for beating Plaintiff on August 21, 2014;

**Count 3:**  Eighth Amendment deliberate indifference claim against Defendants Dean, Hudley, Cole, Brant, and Kichnell for denying Plaintiff access to medical care for the injuries they inflicted on him in the beating of August 21, 2014;

**Count 4:**  First Amendment retaliation claim against Defendants Dean and Hudley for shaking down Plaintiff's cell, taking his legal documents, and threatening his life after Plaintiff reported the August 21 beating;

**Count 5:**  First Amendment retaliation claim against Defendants Dean, Hudley, Cole, Brant, and Kichnell for withholding Plaintiff's meals, intercepting his mail (including grievances and written complaints about their conduct), and telling other inmates that Plaintiff is a snitch;

**Count 6:**  Eighth Amendment claim against Defendant Dean, for soliciting other inmates to physically harm Plaintiff by telling them he was a snitch and promising

to reward them if they attacked Plaintiff.

However, Plaintiff's remaining allegations fail to state a claim upon which relief may be granted, and shall be dismissed. These include: the claim that Defendant Ochs refused to help Plaintiff bring his complaints about the beating and retaliation to the attention of other officials (**Count 7**); due process claim over the disciplinary action and punishment after Plaintiff refused to give up his tray (**Count 8**); claims against Defendant Duncan for failure to monitor, supervise, or investigate problems in the segregation wing (**Count 9**); racial discrimination/equal protection claim (**Count 10**); and Eighth Amendment claim over the denial of meals (**Count 11**).

Further, the Court notes that Plaintiff cannot bring criminal charges against the Defendants. Criminal statutes do not provide for private civil causes of action. *See generally Diamond v. Charles*, 476 U.S. 54, 64-65 (1986) (holding that private citizens cannot compel enforcement of criminal law).

**Dismissal of Count 7 – Defendant Ochs**

According to Plaintiff's recitation of the facts, Defendant Ochs was not a participant in the beatings of Plaintiff or the other inmates, nor did he take part in any of the retaliatory acts directed at Plaintiff. The Court does not condone Defendant Ochs' refusal to assist Plaintiff in seeking help from other prison authorities. However, his inaction does not rise to the level of a constitutional violation.

In order to be held individually liable for a constitutional violation, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). Where an inmate avails himself of the prison grievance procedure, he has no independent claim against a prison official who fails to remedy

his complaint or even fails to respond to the grievance.  It is well established that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).  The same is true with respect to Plaintiff's requests to Defendant Ochs, to help him report his complaints to the Warden or another official.  Defendant Ochs does not incur liability for the original misconduct of the "beat down crew" defendants by refusing to aid Plaintiff in reporting that misconduct after the fact.  *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) ("public employees are responsible for their own misdeeds but not for anyone else's").  Accordingly, the claims against Defendant Ochs in Count 7 shall be dismissed.

**Dismissal of Count 8 – Disciplinary Charge/Conviction**

Plaintiff protests the fact that he was charged with a disciplinary infraction, found guilty, and punished with three months of segregation and revocation of good conduct time, when he was trying to inform the Warden of the misconduct of the guards who had beaten him and other inmates and then retaliated against him.  He points out that other inmates were given only 15 to 30 days in segregation for the same offense (Doc. 1, p. 10).  However, his claim for damages over the alleged denial of due process must be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994).

Under *Heck*, a prisoner cannot bring a civil rights claim for damages based on an allegedly unconstitutional disciplinary action which includes the revocation of good conduct credits, unless the disciplinary "conviction" has first been invalidated or expunged.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive

order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486-87 (emphasis in original).

A prison disciplinary action is the equivalent for *Heck* purposes of a conviction and sentence.  *Edwards v. Balisok*, 520 U.S. 641, 649 (1997) (*Heck* bar means that plaintiff has no claim to pursue so long as the punishment imposed remains in force); *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011); *Gilbert v. Cook*, 512 F.3d 899, 900 (7th Cir. 2008).  Further, "[c]hallenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," and cannot be brought in a civil rights action.  *Muhammad v. Close*, 540 U.S. 749, 750-51 (2004).

Therefore, Plaintiff cannot maintain a civil rights suit seeking damages related to the revocation of his good conduct credits or other punishment, because a judgment in his favor would 'necessarily imply' that the disciplinary action had been invalid.  He may only proceed with a § 1983 claim after his disciplinary decision has first been reversed or otherwise invalidated.  *See Simpson v. Nickel*, 450 F.3d 303, 306-07 (7th Cir. 2006) (*Heck* and *Edwards* held "that a prisoner whose grievance implies the invalidity of ongoing custody must seek review by collateral attack).  Nothing in the complaint indicates that Plaintiff has obtained any ruling invalidating the disciplinary action that revoked three months of his good conduct time.  This civil rights claim must thus be dismissed pursuant to the rule in *Heck*, for failure to state a claim upon which relief may be granted.  *See Moore*, 652 F.3d. at 723; *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

Plaintiff may be able to challenge the disciplinary action in a federal habeas corpus case, but only after he has first presented all of his claims to the Illinois courts, including

appealing any adverse decision to the Illinois Appellate Court and the Illinois Supreme Court. The Illinois courts have recognized mandamus as an appropriate remedy to compel prison officials to award sentence credit to a prisoner. *See* 735 ILL. COMP. STAT. 5/14-101 *et seq*.; *Turner-El v. West,* 811 N.E.2d 728, 733 (Ill. App. 2004) (citing *Taylor v. Franzen*, 417 N.E.2d 242, 247, *aff'd on reh'g*, 420 N.E.2d 1203 (Ill. App. 1981)).  Accordingly, Count 8 shall be dismissed without prejudice to Plaintiff bringing his claim in a properly filed habeas corpus action, ***but only after he has exhausted his state court remedies***.  If he is successful in challenging the disciplinary action that resulted in the loss of good conduct time, he may then re-file his civil rights claim.

**Dismissal of Count 9 – Defendant Warden Duncan**

Plaintiff faults Defendant Duncan for failing to make "mandatory" regular rounds in the segregation wing, which might have given Plaintiff an opportunity to verbally bring his complaints to the warden's attention.  He also complains that the "investigation" into the inmates' allegations of beatings and mistreatment was faulty because it was conducted by prison officials who would cover up the misconduct of their colleagues.  However, none of his allegations suggest that Defendant Duncan was aware of the unconstitutional actions described in Counts 1-6 at the time they occurred, or that he participated in, approved, or condoned any violation of Plaintiff's rights.

Plaintiff's claims against Defendant Duncan boil down to a theory that he should be liable because he held supervisory authority over Defendants Dean, Hudley, Cole, Brant, and Kichnell.  However, there is no supervisory liability in a civil rights action under § 1983, where the doctrine of *respondeat superior* does not apply. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted).  Liability will only attach where a defendant is alleged to be

"personally responsible for the deprivation of a constitutional right," *id.*, as discussed above under Count 7.

Further, the failure to conduct a proper investigation into the alleged misconduct of prison staff does not give rise to a constitutional claim. *See Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (failure to investigate inmates' grievances or complaints does not violate the Constitution). Similarly, the failure to properly carry out such job duties as personally monitoring or making rounds to various areas of the prison, does not rise to the level of a constitutional violation. This is true even if such obligations are "mandatory" under state law or regulations, as Plaintiff implies. A federal court does not enforce such state rules. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

Accordingly, Count 9 and Defendant Duncan shall be dismissed from this action.

**Dismissal of Count 10 – Racial Discrimination/Equal Protection**

Plaintiff claims that his mistreatment at the hands of Defendants Dean, Hudley, Cole, Brant, and Kichnell was related to the fact that he and almost all the other inmates who were beaten are Black, and the officers are all white. He does, however, point out that one of the beaten inmates was white. Other than the racial makeup of the parties, nothing in the complaint suggests that the officers were motivated by racial animus. No racial slurs or comments were uttered in connection with the beating; Plaintiff bases his theory only on his allegations that the officers were born and raised in "Rural America," where people hate minorities (Doc. 1, p. 9). This does not support an equal protection claim.

Aside from the lack of facts that might suggest racial discrimination, Plaintiff's claim that he was beaten on account of his race is redundant to the other claims in this action. A racial discrimination/equal protection claim would be based on the same set of facts already addressed in Counts 1 and 2 above for retaliation and excessive force, which shall receive further consideration. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 F. App'x 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims). The same can be said as to Counts 3-6.

Accordingly, Count 10 shall be dismissed as a duplicate claim.

**Dismissal of Count 11 – Denial of Meals**

In some circumstances, a prisoner's claim that he was denied food may satisfy the objective element of an Eighth Amendment claim – which is that he suffered a serious deprivation of a basic human need. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However, as the Seventh Circuit has held, the denial of food is not a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation); *Cooper v. Sheriff of Lubbock Cnty.*, 929 F.2d

1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days is unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health."); *Robbins v. South*, 595 F. Supp. 785, 789 (D. Mont. 1984) (requiring inmate to eat his meals in less than 15 minutes does not amount to cruel and unusual punishment).

In Plaintiff's case, he claims that Defendant Dean denied him a food tray once on September 18 and twice on September 21.  Beyond that, he states that other officers also denied him a meal on occasion, but he gives no further detail as to how many meals he missed or how frequently he was denied food.  Without more information, the Court cannot assess whether the denial of food was significant enough to suggest a violation of the Eighth Amendment's ban on cruel and unusual punishment.  Therefore, Count 11 shall be dismissed without prejudice.  As noted above, Plaintiff may still proceed on his retaliation claims in Count 5, which include the deprivation of meals by five of the Defendants.

**Litigation History**

In filling out the Court's civil rights complaint form, Plaintiff stated that he had not filed any previous lawsuits relating to his imprisonment (Doc. 1, p. 3).  However, Plaintiff did in fact bring a prior suit in 2012, which resulted in a "strike" when it was dismissed for failure to state a claim upon which relief may be granted.  *Jones v. Pfister*, Case No. 12-cv-1138 (C.D. Ill., dismissed Feb. 7, 2013; Doc. 19).[1]

The Court relies on a party's litigation history listed in his or her complaint to

---

[1]   The Court has consulted the Public Access to Court Electronic Records ("PACER") website (www.pacer.gov) to verify Plaintiff's prior litigation activity.  *See Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 930 n.2 (S.D. Ill. 2006) (a court may judicially notice public records available on government websites) (collecting cases).

adhere to the three-strike requirement of 28 U.S.C. § 1915(g), thus there is a need for reliable information about prior litigation.  As a result, where a party fails to provide accurate litigation history, the Court may appropriately dismiss the action for providing fraudulent information to the Court.  *Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (dismissal appropriate where Court-issued complaint form clearly warned Plaintiff that failure to provide litigation history would result in dismissal).

The Court does not find it appropriate to dismiss the instant action at this time. However, Plaintiff is **WARNED** that if he files another action (or an amended complaint in this case) that fails to disclose his litigation history, that action or complaint shall be subject to dismissal.

## Pending Motions

Plaintiff has filed five motions in the brief time that his complaint has been awaiting preliminary review.  His motion to subpoena witness to testify at jury trial (Doc. 2) is premature, as no trial has yet been scheduled.  This motion is **DENIED**, but without prejudice to Plaintiff refiling the motion at a more appropriate time.

The motion for recruitment of counsel (Doc. 4) and motion to subpoena incident reports pertaining to the removal of Illinois correctional officers in segregation (Doc. 7) shall both be referred to the United States Magistrate Judge Stephen C. Williams for further consideration.

The motion for service of process at government expense (Doc. 6) is **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below on those Defendants who remain in the action.  No service shall be made on the dismissed Defendants.

Plaintiff's motion to request copies of all ex-parte letters from defense attorneys

(Doc. 11) is **DENIED AS MOOT.**  No Defendant has yet been served with the complaint, because service is not ordered by the Court unless the complaint survives review under § 1915A. No ex-parte letters have been received by the Court from any Defendant or defense attorney. This motion further requests the Court to send Plaintiff a copy of the Federal Rules of Evidence and Federal Rules of Civil Procedure.  This request is also **DENIED.**  These rules comprise several hundred pages and the Court does not have resources to provide them to litigants. Plaintiff must rely on the materials available in his prison law library, which should contain those volumes.

**Disposition**

COUNTS 7 and 9 are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.  **COUNTS 8, 10, and 11** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.   Defendants **DUNCAN** and **OCHS** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for Defendants **DEAN, HUDLEY, COLE, BRANT,** and **KICHNELL**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address

provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.   Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Stephen C. Williams** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 4) and the motion to subpoena incident reports (Doc. 7).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Williams for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28

U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 6, 2014**

s/ MICHAEL J. REAGAN
Chief Judge
United States District Court