## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

COREY D. JONES,

|  | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  14-cv-1098-MJR-SCW |
| | ) | |
| MICHAEL DEAN, DEREK HUNDLEY, | ) | |
| CHRIST BRANT, CHRISTOPHER CALE, | ) | |
| and ROBERT KIDWELL, | ) | |
| | ) | |
| Defendants[1]. | | |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

This case is before the Court on a Motion for Summary Judgment (Docs. 26 and 27) filed by Defendants Christ Brant, Michael Dean, and Derek Hundley, and a Motion for Summary Judgment (Doc. 50) filed by Defendants Christopher Cale and Robert Kidwell.  The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a).  It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Defendants' motions for summary judgment (Docs. 26, 27 and Doc. 50).

---

[1] Defendants C. Cale and Sgt. Kidwell have identified themselves as Christopher Cale and Robert Kidwell.  The Clerk is directed to make the changes in the docket to reflect Defendants' proper names.

**FINDINGS OF FACT**

**A. Procedural Background**

Plaintiff, currently in custody at Williamson County Jail, filed his complaint on October 14, 2014 alleging that he was physically assaulted by Defendants while he was incarcerated at Lawrence Correctional Center and that following the incident Defendants retaliated against him and failed to provide him with proper medical treatment (Doc. 1).  As narrowed by the Court's threshold review, Plaintiff's complaint alleged that on August 21, 2014, several inmates that had just been transferred to Lawrence and upon their arrival were taken to the shower and beaten by several guards (Doc. 13, p. 1).  One of those inmates was then transferred to a cell next to Plaintiff's segregation cell where Defendants Dean, Hundley, Cole, Brant, and Kidwell continued to beat him (*Id.*).  Plaintiff called out to the officers objecting to the attack.  Defendant Dean yelled back to Plaintiff that he was next (*Id.* at p. 1-2).

When Defendants were done with the inmate, they ordered Plaintiff to cuff up and took him to the showers where he was beaten by the officers while his hands remained cuffed behind his back (Doc. 13, p. 2).  After the attack, Plaintiff asked for medical treatment but was refused (*Id.*).  Defendant Dean warned Plaintiff not to inform a nurse when she passed out medication later that day or they would come back and beat Plaintiff (*Id.*).  Plaintiff did not say anything to the nurse that day out of fear.  Plaintiff alleges that the attack caused him black eyes, a split lip, and injuries to his lower back and abdomen (*Id.*).  Plaintiff alleges that he did not receive treatment for his injuries prior to filing his complaint (*Id.*).

After the attack, on September 17, 2014, Plaintiff alleges that he refused to let an officer close his food-tray slot until he was allowed to talk to someone about what was going on in segregation (Doc. 13, p. 2).  Plaintiff was taken to two lieutenants and he told them about the

beatings and refusal to obtain him medical treatment (*Id.* at p. 3). Later that same day, Defendants Dean and Hundley removed Plaintiff and his cellmate from their cell and searched it (*Id.*). Plaintiff allegedly saw them go through Plaintiff's legal mail and remove a letter to the warden, four grievances, and a complaint filed with the Illinois State Police regarding the beating (*Id.*). Dean took the documents.

On September 18 and 21, 2014, Plaintiff alleges that Defendant Dean refused to give him a food tray on the 3:00 to 11:00 shift and again refused Plaintiff a breakfast tray on the September 21, 2014 morning shift (Doc. 13, p. 3). Defendant Dean allegedly told Plaintiff that "snitches don't eat." (*Id.*). Plaintiff alleges that Dean told other inmates that Plaintiff was a snitch (*Id.*).

In response to Plaintiff's complaint, Defendants filed the pending motions for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies prior to filing his complaint. Defendants noted that the ARB did not receive any grievances regarding the allegations alleged in Plaintiff's complaint (Doc. 27-1, p. 3-4; Doc. 29-1). Defendants also pointed out that one of Plaintiff's counselors, Tony Kittle, denied telling Plaintiff that his grievances would not be processed and indeed responded to past grievances submitted by Plaintiff (Doc. 59-1, p. 1; 59-2). Plaintiff filed a response to Defendants' motions arguing that he attempted to exhaust his administrative grievances by submitting them in the mail at Lawrence but that his mail was intercepted by Defendants and his counselor, who refused to process his grievances.

**B.** *Pavey* **Hearing**

As there was a dispute of fact as to whether Plaintiff attempted to submit grievances but was thwarted in his process, the undersigned held a hearing pursuant to ***Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).**

Tony Kittle, a correctional counselor at Lawrence Correctional Center, first testified that he was Plaintiff's counselor while Plaintiff was in general population.  Kittle testified that he would not have received the grievances about the incidents which took place in August and September 2014, which form the basis of Plaintiff's complaint, because Plaintiff was in segregation at the time and the counselor in segregation would have reviewed the grievances.  He testified that he did not prevent Plaintiff from filing grievances and that he returned two grievances on August 28, 2014 that Plaintiff filed while he was in general population (Doc. 59-2, p. 1).

Collin Ray, another correctional counsel at Lawrence, testified that he was Plaintiff's correctional counselor while Plaintiff was in segregation.  Plaintiff was in segregation from August 2014 until January 2015.  The cumulative counseling summary reflects that Ray met with Plaintiff on August 11, 2014 for his 72-hour segregation contact (Doc. 59-2, p. 1).  Ray testified that inmates may submit grievances while in segregation by either placing the grievance in the grievance box in the foyer when they are moved, although Ray admitted that inmates in segregation are not moved often.  He also testified that inmates may submit grievances directly to the counselor or to an inmate porter who can also put the grievance in the lockbox.  Ray stated that he did not know whether it was against IDOC policy to submit grievances to inmate porters and that he cannot control who an inmate chooses to give his grievances to.  He acknowledged that inmates may submit grievances to the officers in segregation to submit to the lockbox and stated that while it is possible for those officers to throw the grievances away, he finds it unlikely that they would destroy the grievances in such a way.

Ray testified that he did not receive any grievances from Plaintiff regarding the alleged assault on August 21, 2014 or regarding the failure to obtain medical care or Defendants' retaliation after the assault.  He also did not remember Plaintiff telling him that he was assaulted or was being

retaliated against by Defendants.  He noted that the counseling summary indicated that he met with Plaintiff on September 10, 2014 to facilitate a phone call from federal probation but all Ray did was help set the phone call up (Doc. 59-2, p. 1).  He testified that he never threw any of Plaintiff's grievances away or indicated to Plaintiff that he would not investigate a grievance.

Ray indicated that he recalled an incident in September 2014 where Plaintiff and other inmates refused to return their food trays in order to force someone to come down and hear their complaints.  He does not recall, however, what issue the inmates sought to have resolved by taking their chuckholes hostage.

Plaintiff also testified about his grievances.  Plaintiff stated that he was assaulted on August 21, 2014 by Defendants and that he wrote a grievance about the assault that day.  Plaintiff pointed out that he actually wrote two grievance on August 21, one about his assault and one regarding the assault on the other recently transferred inmates, the protest of which led to his own assault. Plaintiff attached these grievances to his complaint (Doc. 1-1, p. 19-22).  Plaintiff testified that he tried to submit his grievances two ways: by submitting the grievances through his chuckhole for the officers to pick up and drop in the grievance box and by submitting the grievances directly to the counselor.  Plaintiff testified that when he placed them in his cell door to be picked up by officers, Defendant Dean later came back with the grievances and threatened to beat him again if Plaintiff continued to pursue his grievance.  Plaintiff also testified that he submitted his grievances directly to Ray when Ray stopped by his cell the following week, but that Ray simply read the grievances and returned them saying that the grievances were not going anywhere and suggesting that Plaintiff simply due the short remainder of his time quietly.

Plaintiff identified the grievances in his complaint dated August 21, 2014 as the grievances that he wrote on August 21, 2014 and submitted both to counselor Ray and to the officers.  Plaintiff

testified that the two grievances were exact copies and that he attempted to submit them both on the evening of August 21, 2014.  He then tried to hand them to Ray the next week when Ray made his rounds but Ray simply read them and gave them back.  Plaintiff testified that grievances dated September 10, 2014, September 17, 2014, and September 19, 2014 were written on those dates and that Plaintiff initially tried to submit them through the mail by placing them in his bars on the days that they were written (Doc. 1-1, p. 23-29).  Plaintiff then later tried to submit them directly to Ray.

Plaintiff testified that the administrative process was unable to him because his counselor would not accept the grievances and the officers who picked up the grievances, the same officers who participate in the assault against Plaintiff, simply threw the grievances away and threatened to beat him again.

At the end of the hearing, Plaintiff stated that he wished to call two witnesses, his cellmate on August 21, 2014 and another inmate whose cell was located next to Plaintiff's cell, who would both testify that Plaintiff tried to submit his grievances but that the grievances were not accepted. Plaintiff attached his cellmate's affidavit to his complaint (Doc. 1-1, p. 2).  The affidavit states that he saw Plaintiff try to file a grievance and Defendant Dean tore up the grievance (*Id.*).  Plaintiff also attached an affidavit from Maurice Jones who was in the cell next to Plaintiff (Doc. 1-1, p. 3). Although not identical, Jones' affidavit also states that Defendant Dean refused to accept the grievances.

### C.  Plaintiff's Grievances

At the hearing, Plaintiff testified that his grievances, attached to his complaint, were originally written on the dates labeled on his grievances and that he attempted to submit the grievances through the institutional mail on those dates.  Plaintiff testified that the grievances were copies of the exact grievances he wrote.

However, a review of the grievances attached to Plaintiff's complaint refutes Plaintiff's testimony. The grievances attached were not written on the dates that Plaintiff alleged he wrote them on. For instance, Plaintiff attached to his complaint a grievance dated August 21, 2014 (Doc. 1-1, p. 19-20) regarding the assault on him by Defendants which allegedly took place on August 21, 2014. Plaintiff testified at the hearing that the grievance was a copy of the grievance he wrote and attempted to submit on August 21, 2014. A review of the grievance, however, reveals that the grievance not only includes allegation involving the alleged assault on August 21, 2014, but also discusses events which took place in September 2014. The grievance indicates that from September 18, 2014 to September 21, 2014, he did not eat on certain shifts that Defendant Dean worked because Dean refused to provide Plaintiff with food. Plaintiff alleged that on September 21, 2014, he also did not receive breakfast because Defendant Dean worked a double shift and refused Plaintiff a tray. At the time that Plaintiff alleges that he wrote his grievance, August 21, 2014, these events had not yet occurred. So it impossible that Plaintiff wrote the grievance dated August 21, 2014 on August 21, as he testified, because he included allegations in his grievance which did not occur until September. This leads the undersigned to believe that the grievance was written sometime after September 21, 2014 and not on August 21, 2014.

Plaintiff's grievance dated September 17, 2014 has similar issues (Doc. 1-1, p. 25-26). Plaintiff testified at the hearing that he wrote the grievance on September 17, 2014 and attempted to turn the grievance in on that date. However, his grievance includes allegations which happened from September 18, 2014 to September 21, 2014 as Plaintiff again claims that Defendant Dean refused to feed him on the 3 to 11 shift on those days and that he was also denied breakfast on September 21, 2014 as Defendant Dean worked a double shift. Again, Plaintiff could not possibly have written his September 17, 2014 grievance on that date, or attempted to turn it in to his

counselor on that date, as he testified to at the hearing, because he included allegations which did not occur until the following four days. Thus, the grievance itself proves that Plaintiff did not write the grievance on the date he testified to.

## CONCLUSIONS OF LAW

### A. Summary Judgment Standard

Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, **604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* **(emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, **438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge.  ***Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008).**  Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.  (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over.  (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* **at 742.**

## B.  Exhaustion Requirements Under Illinois Law

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims.  **20 Ill. Administrative Code §504.800** *et seq.*  The grievance procedures first require inmates to speak with the counselor about their complaint.  **20 Ill. Admin. Code §504.810(a).**  Then, if the counselor does not resolve

the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident.  *Id.*  The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint.  The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).**  "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances."  **20 Ill. Admin. Code §504.830(d).**  If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB").  The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.  Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached."  **20 Ill. Admin. Code §504.850(a).**  "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations."  **20 Ill. Admin. Code §504.850(e).**  "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances.  The offender shall be sent a copy of the Director's decision."  **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance.  In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis.  **20 Ill. Admin. Code §504.840(a).**  If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary after reading the grievance.  **20 Ill. Admin. Code §504.840(b).**  Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis. **20 Ill. Admin. Code §504.850(g).**

### C.  Motion to Strike

The undersigned notes that in addition to the pending motions for summary judgment, Defendants submitted a motion to strike (Doc. 67) seeking to strike a sur-reply filed by Plaintiff (Doc. 65).  However, it appears to the undersigned that Plaintiff's response (Doc. 65) is actually a supplement to his original response (Doc. 60) and the undersigned construes it as such. Accordingly, the Court **DENIES** the motion to strike (Doc. 67).

### D.  Oral Motion for Additional Witnesses

At the close of testimony at the June 1, 2015 hearing, Plaintiff asked for leave to call two witnesses on the summary judgment motions.  Plaintiff testified that the witnesses, his cellmate and another prisoner located in the cell next to Plaintiff, would testify that Plaintiff tried to properly submit his grievances to the counselor but was thwarted.  The undersigned initially took Plaintiff's request under advisement, but now **DENIES** that request.  As will be shown in the undersigned's analysis of Plaintiff's exhaustion attempts, Plaintiff clearly lied to the Court both in his testimony

and in his submitted exhibits which justifies a dismissal of his claims. Thus, the undersigned needs no further testimony to reach its recommendation and will not allow Plaintiff to call additional witnesses.

### E. Analysis

Here, the Court finds that Plaintiff has failed to exhaust his administrative remedies as to his claims against Defendants. Plaintiff testified that he attempted to submit grievances regarding his claims in August and September, but that the officers threw them away and his counselor refused to rule on his grievance. If Plaintiff's statements were true, Plaintiff would be deemed to have properly exhausted his retaliation claim because his efforts to properly exhaust would be deemed thwarted. **See *Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources); *Brown v. Darnold*, 2010 WL 3702373, at \*3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).**

However, the undersigned finds that Plaintiff's testimony lacks credibility. Plaintiff testified that he wrote and attempted to submit the August 21, 2014 grievance, alleging that Defendants assaulted him, on August 21, 2014. Plaintiff pointed to the grievance dated August 21, 2014 in his complaint (Doc. 1-1, p. 19-20) as proof that he had written a timely grievance. Plaintiff testified that the grievance in his complaint was an exact copy of the grievance that he attempted to submit both to the correctional officers and to his counselor. He reiterated that the grievance was written on

August 21, 2014.  Those statements, however, are clearly untrue.  A review of the grievance attached to his complaint shows that the grievance could not have been written on August 21, 2014 because it included allegations against Defendant Dean which did not occur until September.  Plaintiff's grievance (Doc. 1-1, p. 19-20) alleges that from September 18 to September 21, Defendant Dean refused to provide Plaintiff with his meal while Dean was on duty.  These events, which also make up one of the counts in Plaintiff's complaint, took place after Plaintiff allegedly wrote the grievance on August 21, 2014.  Thus, it is clear to the undersigned, that Plaintiff was lying when he testified that he wrote and sought to deliver the grievance on August 21, 2014.  Plaintiff clearly could not have written the grievance until sometime after September 21, 2014 when the last events in his grievance took place.  The undersigned similarly finds that Plaintiff lied when he testified that he wrote and sought to deliver his September 17, 2014 grievance (Doc. 1-1, p. 25-26) on September 17 2014 as it too contains allegations which did not occur until after the grievance was supposedly written.

As Plaintiff clearly lied to the undersigned when he testified that he wrote his grievances and sought to submit them on the same dates, the undersigned finds that his testimony lacks credibility. Thus, his testimony that he tried to submit the grievances but the grievances were either destroyed or rejected by his counselor lacks credibility as he testified that those events occurred either on the dates he wrote the grievances or shortly thereafter.  As Plaintiff clearly did not write the grievances on the dates he testified to, his testimony that his counselor and other defendants destroyed or refused the grievances is also suspect as those events clearly did not take place on the dates Plaintiff testified they took place, if they took place at all.  The testimony and evidence presented to the undersigned indicates that Plaintiff is lying to the Court.  As such, there is no indication that he

sought to submit grievances as he testified to and was thwarted in his efforts.  Thus, the undersigned finds that Plaintiff failed to exhaust his administrative remedies.

Further, as it is clear to the undersigned that Plaintiff blatantly lied to the undersigned at the hearing and falsified documents, grievances which he backdated or outright falsified to make it seem like he sought to exhaust his grievances, the undersigned **RECOMMENDS** that Plaintiff's claims be **DISMISSED WITH PREJUDICE** for his perjury.  The Court does not "tolerate deception from litigations." *Neal v. LaRiva*, **765 F.3d 788, 790 (7th Cir. 2014).**  Further, the Seventh Circuit has indicated that dismissal is a proper sanction for lying to the Court.  *Rivera v. Drake*, **767 F.3d 685, 686-87 (7th Cir. 2014) (citing** *Haskins v. Dart*, **633 F.3d 541, 544 (7th Cir. 2011);** *Ridge Chrysler Jeep, LLC v. DaimlerChrysler Financial Services Americas LLC*, **516 F.3d 623, 626-27 (7th Cir. 2008);** *Greviskes v. Universities Research Association, Inc.*, **417 F.3d 752, 759 (7th Cir. 2005);** *Thomas v. General Motors Acceptance Corp.*, **288 F.3d 305, 308 (7th Cir. 2002)).**

## CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff was lying about the grievances he submitted and when he submitted those grievances and further **FIND** that Plaintiff failed to properly exhaust his administrative remedies.   It is further **RECOMMENDED** that the Court **GRANT** Defendants' motions for summary judgment (Docs. 26 and 50), **DENY** Plaintiff's motion for summary judgment (Doc. 48), and **DISMISS with prejudice** Plaintiff's claims against Defendants.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District

Court or the Court of Appeals. *See, e.g., Snyder v. Nolen*, **380 F.3d 279, 284 (7th Cir. 2004).**

Accordingly, Objections to this Report and Recommendation must be filed on or before **June 22, 2015.**

       **IT IS SO ORDERED**.

       DATED: June 4, 2015.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge
